UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY C.,

                Plaintiff,

             -v-                    5:19-CV-1393

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

AMDURSKY, PELKY LAW FIRM     AMY CHADWICK, ESQ.
Attorneys for Plaintiff
26 East Oneida Street
Oswego, NY 13126

SOCIAL SECURITY           AMELIA STEWART, ESQ.
   ADMINISTRATION        Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM–DECISION & ORDER</u>

## I.  <u>INTRODUCTION</u>

On November 8, 2019, plaintiff Jeffrey C.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") partially denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.[2]

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

[2]  Plaintiff's appeal was initially dismissed for failure to prosecute. Dkt. No. 18. However, after it came to light that plaintiff's attorney had made misrepresentations to the Court about his client's intentions, plaintiff secured new counsel and the parties stipulated to vacatur of the judgment. Dkt. No. 25. Plaintiff's prior attorney has been suspended from practice. Dkt. No. 17.

## II. **BACKGROUND**

On May 25, 2018, plaintiff filed an application for DIB alleging that his various mental and physical impairments rendered him disabled beginning on March 3, 2017, the date on which he was involved in a serious motor vehicle accident.  R. at 211–12, 222–23.[3]

Plaintiff's claim was initially denied on July 11, 2018.  R. at 134–39.  At his request, a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on April 15, 2019.  *Id*. at 84–118.  Plaintiff, represented by attorney P. Michael Shanley, appeared and testified in Syracuse, New York.  *Id*.  The ALJ also heard testimony from Vocational Expert Esperanza DiStefano.  *Id*.

On April 25, 2019, the ALJ issued a written decision granting in part and denying in part plaintiff's application for benefits.  R. 20–30.  The ALJ found that plaintiff became disabled on, and was therefore entitled to benefits running from, February 27, 2018, the date on which plaintiff turned fifty-five years old.  *Id*.

However, the ALJ concluded that plaintiff had not established a qualifying disability in the limited period of time between March 3, 2017, the alleged onset date, and February 27, 2018, the date of plaintiff's fifty-fifth

---

[3] Citations to "R." refer to the Administrative Record.  Dkt. No. 6.

birthday.  R. at 20–30.  This partially favorable decision became the final

decision of the Commissioner on September 4, 2019, when the Appeals

Council denied plaintiff's request for review.  R. at 1–3.

## III.  <u>LEGAL STANDARD</u>

The Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  To qualify as disabled within the meaning

of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must
> be] of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide

whether a claimant is disabled.  20 C.F.R. § 404.1520.[4]  At step one, the ALJ

determines whether the claimant is currently engaged in "substantial gainful

---

[4]  Section 404.1520 sets forth the five-step evaluation for Disability Insurance Benefits ("DIB").  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

activity." § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work."  § 404.1520(e)–(f).  If so, the claimant is not disabled.  § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his

age, education, and work experience, permits the claimant to do any other work in the national economy.  § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five.  *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id.*

## IV.  **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since March 3, 2017, the alleged onset date; (2) plaintiff's traumatic brain injury, seizure disorder, and hypertension were "severe" impairments within the meaning of the Regulations; and that (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 22–24.

At step four, the ALJ determined that plaintiff retained the RFC to perform a limited range of light work.  R. at 24.  In particular, the ALJ found that plaintiff could:

> occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, stand or walk for six hours in an eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and can perform occasional balancing stooping, kneeling, crouching, and crawling. He should avoid work at unprotected heights or in

> conjunction with dangerous machinery.  He should not operate a motor vehicle.  Work limited to simple, routine, and repetitive tasks in a work environment involving only simple, work-related decisions; with few, if any, work place changes.

*Id.*

The ALJ determined that plaintiff had past relevant work as an "automobile salesperson," as a "business owner," and as an "industrial safety and health technician," but concluded that claimant would be unable to perform any of this past work based on the stated RFC.  R. at 28.

After considering the relevant factors, the ALJ determined that plaintiff retained the RFC to perform work in representative jobs such as a "housekeeping, cleaner," as a "marker," and as a "photocopy machine operator."  R. at 29.  Because these representative jobs existed in sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled between March 3, 2017, the alleged onset date, and February 27, 2018, the date of plaintiff's fifty-fifth birthday.  *Id.*

However, the ALJ concluded that beginning on February 27, 2018, the date of plaintiff's fifty-fifth birthday, there were no jobs that existed in sufficient numbers in the national economy for someone of plaintiff's age, education, and work experience when those factors were considered together with the stated RFC finding.  R. at 29.

This was so, the ALJ explained, because plaintiff's change in "age category" under the Regulations meant that a "direct application of Medical-Vocational Rule 202.06" required a finding of disability.  R. at 29. Accordingly, the ALJ found plaintiff disabled and granted his application for benefits beginning on February 27, 2018.  *Id*.

## A.  **Plaintiff's Appeal**

Plaintiff has appealed from the portion of the ALJ's decision that denied him benefits between March 3, 2017, the alleged onset date, and February 27, 2018, the date on which the ALJ found him disabled.  According to plaintiff, the ALJ failed to (1) adequately develop the record because he interrupted plaintiff's testimony during the hearing; (2) properly evaluate his mental impairments at step two of the sequential analysis; and (3) incorporate plaintiff's absenteeism and other impairments into the RFC.  Pl.'s Mem., Dkt. No. 27 at 12–24.[5]

### 1.  **Duty to Develop the Record**

As an initial matter, plaintiff contends the ALJ breached his duty to develop the record by improperly interrupting his hearing testimony.  Pl.'s Mem. at 21–22.  According to plaintiff, the ALJ's decision to cut off plaintiff's attorney's questioning and shift to a colloquy with the Vocational Expert

---

[5]  Pagination corresponds to CM/ECF.

prevented plaintiff from "adequately develop[ing] the record with regard to his symptoms and limitations." *Id*. at 21.

Because "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000), "the social security ALJ, unlike a judge in a trial, must . . . affirmatively develop the record," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). This remains true even if plaintiff is represented by counsel. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

Upon review of the transcript, there was no error or bias in the ALJ's conduct. To the contrary, the ALJ explained to claimant that he was seeking to elicit testimony bearing on the period of time before his fifty-fifth birthday. R. at 103–104. Thereafter, plaintiff's attorney questioned him in a successful effort to elicit about this time period. *Id*. at 104–110. For instance, plaintiff testified about the frequency, duration, and severity of the ringing in his ears and about some of his other symptomatology. *Id*. This testimony was in addition to earlier testimony from plaintiff about his seizures and other symptoms. *Id*. at 89–93. When plaintiff's responses began to seem repetitive or circular, the ALJ chose to stop further testimony from plaintiff and bring in the Vocational Expert. *Id*. at 109–110. There is no error, reversible or otherwise, in the ALJ's conduct at the benefits hearing. Accordingly, this argument will be rejected.

### 2. **Mental Impairments**

Next, plaintiff contends that the ALJ should have found his anxiety and depression to be "severe" mental impairments at step two of the sequential analysis. Pl.'s Mem. at 16. According to plaintiff, the ALJ ignored the fact that "[t]he record is replete with references to the significant struggles Plaintiff has with anxiety, emotional lability, crying spells, and even panic attacks." *Id.* at 17.

"Step two's 'severity' requirement is *de minimis* and is meant only to screen out the weakest of claims." *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018). "However, despite this lenient standard, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (cleaned up). "Rather, to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in a claimant's ability to perform work-related functions." *Id.*

"Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')." *Lake v. Colvin*, 2016 WL 2757750, at *6 (N.D.N.Y. May 12, 2016) (cleaned up). "This technical method helps administrative law judges first determine whether claimants have

medically[ ] determinable mental impairments." *Id.* "This technique also enables administrative law judges to determine [ ] whether medically[ ] determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.*

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments.  20 C.F.R. § 404.1520a(b)(1).  If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically determinable mental impairment(s).  § 404.1520a(b)(2).  This involves consideration of "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  § 404.1520a(c)(3).

These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity."  § 404.1520a(c)(4).  If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise

indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1).

A review of the ALJ's narrative discussion about plaintiff's claim reflects that he applied this "special technique." R. at 23–24.  In brief, the ALJ found that plaintiff's anxiety disorder and depressive disorder were "medically determinable impairments," analyzed the four broad functional areas, and determined that plaintiff had only "mild" limitation in each.  *Id.*  Accordingly, the ALJ concluded that plaintiff's anxiety disorder and depressive disorder were "nonsevere."  *Id.* at 23.

To reach this result, the ALJ relied primarily on the overall conservative nature of plaintiff's mental treatment history and on the mostly normal mental status findings recorded in the treatment notes.  R. at 23–24.  For instance, although the ALJ acknowledged that plaintiff "has exhibited anxiety and agitation/frustration during some examination," the ALJ noted that he presented "for the majority of examinations as cooperative and with adequate social skills."  *Id.* at 23.  These findings are broadly supported by the June 2018 opinion of Edward Kamin, Ph.D, a non-examining consultant who reviewed the existing medical record concluded that plaintiff's mental impairments were "non-severe" within the meaning of the Regulations.  *Id.* at 124–26.

Plaintiff argues that the ALJ's determinations of "mild" limitation in the four functional areas are not supported by substantial evidence.  Pl.'s Mem. at 17.  As plaintiff points out, there are several notes in the medical record between March of 2017 and October of 2017 that recount plaintiff's "ongoing issues with being very emotional and crying all the time."  *Id.*  In addition, plaintiff points to treatment records from several different mental health examiners who met with him in February, March, May, September, and December of 2018 that, generously construed, tend to show more severe mental limitations than those ultimately assessed by the ALJ.  *Id.* at 18–20.

Upon review, this argument will be rejected.  "It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence."  *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.).  The ALJ correctly identified various evidentiary conflicts when applying the special technique: on the one hand, there was evidence in the record tending to show that plaintiff occasionally exhibited symptomatology that might qualify as "severe"; on the other, there was evidence from various treatment records tending to undermine the conclusion that plaintiff's mental limitations were anything other than "mild."

The Commissioner correctly points out that most of these citations in the medical record are to plaintiff's subjective reports of mental symptomatology. Def.'s Mem., Dkt. No. 30 at 9 (noting that this portion of plaintiff's argument

includes citations to "only three medical records that contain *any* objective indicia of mental symptoms"). For the reasons explained at length in the Commissioner's brief, the ALJ was entitled to resolve these evidentiary conflicts by relying on, *inter alia*, the fact of plaintiff's relatively conservative mental health treatment regimen and on Dr. Kamin's review of the medical record. *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J., adopting Report & Recommendation of Bianchini, M.J.) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Even assuming otherwise, any error at step two was harmless under the facts presented by plaintiff's appeal. "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Smith*, 351 F. Supp. 3d at 278 (cleaned up).

That conclusion is especially appropriate where, as here, the ALJ's RFC determination would have accommodated even a more restrictive finding of

"moderate" mental limitations.[6]  Def.'s Mem. at 30 n.4.  The ALJ's RFC

finding in this case limited plaintiff to "simple, routine, and repetitive tasks

in a work environment involving only simple, work-related decisions" and

"few, if any, work place changes."  R. at 24.

"[C]ourts have routinely held that individuals suffering from 'moderate'

difficulties with memory, concentration, and handling stress could reasonably

be found to have the [RFC] to perform 'simple, routine and repetitive

tasks.'"  *Worthy v. Berrhyill*, 2017 WL 1138128, at *8 (D. Conn. Mar. 27,

2017).  Accordingly, these arguments will be rejected.  *Reices-Colon v. Astrue*,

523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding step two error

harmless where non-severe impairments were considered as part of

subsequent steps in the disability evaluation process); *Worthy*, 2017 WL

1138128, at *7 ("[C]ourts in the Second Circuit have consistently declined to

remand if the plaintiff cannot show how correcting the ALJ's legal errors will

reasonably result in a different outcome[.]").

### 3.  **The RFC Finding**

Finally, plaintiff contends that the ALJ's RFC finding is not supported by

substantial evidence because: (1) it fails to account for his absenteeism or

time off-task; (2) does not accommodate his severe headaches; (3) does not

---

[6]  A remand might be required if the ALJ's alleged error involved "marked" limitations.  *Worthy*,
2017 WL 1138128, at *8 (explaining relevance of distinction).

contain sufficient non-exertional limitations stemming from his mental health impairments; and/or (4) does not address confusion, memory deficits, or "feeling slowed or in a fog." Pl.'s Mem. at 12–15, 22–24.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on

medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Historically, the Regulations divided evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[7]  Under this category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).  This came to be known as the "treating physician rule." *Id.*

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources.[8]  Under the new regime, "no particular deference or special weight is given to the opinion of a treating physician." *Quiles v. Saul*, 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).  Instead, an ALJ is now obligated to evaluate "all of the medical

---

[7]  A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant.  *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

[8]  The new Regulations apply to claims filed on or after March 27, 2017.  Because plaintiff's claim was filed on May 25, 2018, the new Regulations appear to govern this appeal.  The parties do not argue otherwise.

opinions" based on the same general criteria: (1) supportability;

(2) consistency with other evidence; (3) the source's relationship[9] with the

claimant; (4) the source's area of specialization; and (5) other relevant

case-specific factors "that tend to support or contradict a medical opinion or

prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c)(1)–(5);

416.920c(c)(1)–(5).

The most important of these factors are supportability and consistency.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Although the Regulations obligate

the ALJ to explain how he or she considered these two specific factors, "an

explanation for the remaining factors is not required unless the ALJ is

deciding among multiple medical opinions of equal support and consistency

on the same issue that differ slightly."  *Dany Z. v. Saul*, –F. Supp. 3d–, 2021

WL 1232641, at *9 (D. Vt. Mar. 31, 2021); *see also* §§ 404.1520c(b)(2),

416920c(b)(2).

Plaintiff's primary challenge to the RFC finding involves the ALJ's refusal

to conclude that plaintiff's treatment would render him absent from work (or

off-task) too frequently to perform full-time work on a regular and continuing

basis.  Pl.'s Mem. at 12–15.  According to plaintiff, during the relevant time

---

[9] This "relationship" factor includes (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

period he routinely underwent lengthy treatments, including "hyperbaric chamber treatments," that "would have caused him to miss a significant portion of the workday." *Id.* at 14.  Plaintiff also points to an April 2019 medical source statement from Carlos Dator, M.D., his treating physician, in which Dr. Dator opines that plaintiff would be absent from work "3 days or more per month."  R. at 890.

Upon review, this argument will be rejected.[10]  First, even taking the duration and frequency of plaintiff's various medical treatments into account, there is insufficient evidence in the record from which to conclude that plaintiff "would be absent from work to a degree [necessary] to establish total disability."  Def.'s Mem. at 13; *see also Robbins v. Saul*, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) (expressing skepticism about whether this kind of argument was cognizable but rejecting it on the merits because the claimant's evidence of numerous doctor's appointments, treatments, and procedures failed to demonstrate they would have precluded him from working).

Second, plaintiff's reliance on Dr. Dator's April 2019 medical source statement is an insufficient basis on which to conclude that the ALJ erred.  The ALJ was not obligated to accept Dr. Dator's opinion. *See, e.g.,*

---

[10]  Notably, the ALJ rejected plaintiff's prior attorney's assertions on this point as unsupported by any evidence.  R. at 26.  Plaintiff's new counsel has appropriately confined the current arguments to record citations.

*Tamara M. v. Saul*, 2021 WL 1198359, at *8 (N.D.N.Y. Mar. 30, 2021)
(Hummel, M.J.) (collecting cases noting that "check-box assessment forms"
may be "reasonably accorded less weight" when they "do not explain how they
reached these limitations").

Instead, the ALJ was entitled to independently evaluate the
persuasiveness of Dr. Dator's April 2019 opinion in accordance with the
Regulations.  The ALJ did so, concluding that Dr. Dator's opinion was "not
entirely persuasive" because his medical source statement failed to provide
"objective findings to support his conclusions."  R. at 27.  Indeed, the ALJ
determined that the "finding that the claimant would miss three or more
days of work per month" was "speculative."  *Id*. at 28.

Notably, a medical opinion may properly be accorded less weight if it
relates to a time frame outside the relevant period.  *Cf. McAllister v. Colvin*,
205 F. Supp. 3d 314, 332 (E.D.N.Y. 2016) (noting same where physician's
opinion is rendered beyond the claimant's date last insured).  This point
bears emphasis, since Dr. Dator's April 2019 opinion was rendered well after
the ALJ found plaintiff disabled on February 27, 2018.

Thus, there is no clear basis on which to conclude that the statements
made in Dr. Dator's April 2019 opinion relate to the relevant time period at
issue in this appeal—the relatively brief interval between the alleged onset
date in March of 2017 and the eventual finding of disability in February of

2018.  Under these circumstances, the ALJ's decision to partially reject the findings in Dr. Dator's April 2019 opinion did not amount to reversible error.

Plaintiff's other challenges to the ALJ's RFC determination must also be rejected for substantially the reasons set forth *supra* in the discussion surrounding mental impairments.  Plaintiff's complaints of confusion, memory deficits, and of "feeling slowed or in a fog" were considered by the ALJ as part of his analysis of the degree of plaintiff's mental impairments.

To the extent plaintiff also contends the ALJ failed to account for his severe headaches, that argument must also be rejected because the ALJ's narrative discussion clearly accounts for them.  *See, e.g.*, R. at 27 (noting claimant's self-reports about improvement in the frequency of his headaches). And as the Commissioner's brief demonstrates, plaintiff only infrequently reported headaches during the relevant time period.  Def.'s Mem. at 16.  In short, plaintiff has failed to identify sufficient evidence in the record from which to conclude that the ALJ's failure to incorporate additional limitations amounts to reversible error.

## IV.  <u>CONCLUSION</u>

The ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is

GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and

close the file.

IT IS SO ORDERED.


Dated:  December 2, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge